Civ. No. 26234.   Second Dist., Div. Two.   Mar. 4, 1963.]

MARIE M. DEVINE, Plaintiff and Respondent, v. THOMAS A. DEVINE, Defendant and Appellant.

550

Bennett & Reintjes and Paul E. Reintjes for Defendant and Appellant.

Cagle & Garcelon and Kenneth M. Garcelon for Plaintiff and Respondent.

FOX, P. J.—This is an appeal by defendant from an order: (1) relating to his visitation rights with the minor child of the parties; (2) requiring increased child support payments; and (3) holding defendant in contempt for: (a) failure to keep in force a certain insurance policy on his life, in which the child was named beneficiary; and (b) for his failure to make certain past due child support payments.

Plaintiff brought an action for divorce on the grounds of extreme cruelty in October 1955. The case was heard as a default. An interlocutory decree of divorce was entered in June 1956. The final decree was entered July 3, 1957.

The custody of the minor child of the parties—Kathleen— was awarded to plaintiff with defendant being given visitation privileges which consisted of physical possession of the child on certain weekends of each month. Defendant was ordered to pay plaintiff for support of the minor child the sum of $70 per month, until further order of the court.

On August 15, 1961, defendant filed (1) an order to show cause in re contempt, alleging that plaintiff had refused him his visitation privileges; (2) an order to show cause in re modification of the interlocutory judgment of divorce where-in defendant requested greater visitation rights. On September 18, 1961, plaintiff filed an affidavit in opposition to the above orders to show cause. She also filed an order to show cause in re modification of custody and child support orders wherein plaintiff requested an increase in child support payments and a deprivation of visitation rights of defendant. On the same date plaintiff also filed an order to show cause in re contempt, alleging (1) that defendant had failed to make support payments, having the present ability to do so; (2) that defendant had wilfully failed to keep in full force and effect certain life insurance policies on his life with the minor child as beneficiary; and (3) that defendant had regularly annoyed, harassed and humiliated plaintiff and her present husband and had, on certain occasions in September 1959, used violence against plaintiff.

After hearing these matters in September 1961, the court made the following order: (1) denied defendant's order to show cause re modification; (2) dismissed defendant's order to show cause re contempt; (3) eliminated defendant's right

of visitation; (4) modified the support payments by increasing the child support from $70 to $85 per month; and (5) adjudged defendant guilty of contempt of court for failure to maintain in force the life insurance policy and for failure to make certain past child support payments, having the ability to do so. Defendant has appealed from the portions of the order referred to in items 2, 3, 4 and 5.

## CONTEMPT (Items 2 and 5)

Under the cases, no appeal lies from an order made in a contempt proceeding. (*Brady* v. *Superior Court*, 200 Cal.App.2d 69, 72 [19 Cal.Rptr. 242]; *Nutter* v. *Superior Court*, 183 Cal.App.2d 72, 73 [6 Cal.Rptr. 404].) A review in contempt cases is available only by an appropriate writ. (*Monjar* v. *Superior Court*, 12 Cal.2d 715 [87 P.2d 694].) By this appeal defendant also questions the propriety of the trial court's ruling that plaintiff was not in contempt in denying defendant visitation rights. It has been further held that an appeal does not lie from an order dismissing a proceeding for an alleged contempt of court. (*Sanchez* v. *Newman*, 70 Cal. 210 [11 P. 645].) The purported appeal relative to the above contempt matters should therefore be dismissed.

## DENIAL OF VISITATION

In the interlocutory and final decrees of divorce, the father was given the privilege of having the child with him on the second weekend of each month and on the fourth Saturday, provided he gave the mother 24-hours' notice of his intention to exercise such visitation rights. He was also given the right to have the child for one week each summer during the child's school vacation, provided he gave the mother notice at the beginning of the summer vacation period of the specific week that he desired to have the child. This privilege was exercised until September 1959, at which time defendant was refused visitation by plaintiff and Mr. Emerson, plaintiff's present husband. The trial court modified the visitation provisions contained in the interlocutory and final decrees of divorce by in effect eliminating those provisions and by adding the words "without right of visitation to the defendant father."

In this type of proceeding the best interest of the child must be given paramount consideration. (Civ. Code, § 138; *Sanchez* v. *Sanchez*, 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533].) However, it must also be remem-

bered that the father has a right, subservient only to the best interest of the child, to visit reasonably with his child. "Such right ensues from parenthood and should not be denied without cause." (*DeBoynton* v. *DeBoynton,* 137 Cal.App.2d 106, 110 [289 P.2d 868]; see, also, *Milne* v. *Goldstein,* 194 Cal.App.2d 552, 560 [15 Cal.Rptr. 243].)

Because of the importance of the parent-child relationship and the likely benefits to the child as it grows up from reasonable (and, where necessary, supervised or restricted) visits with the parent who does not have custody, the courts should not deprive such a parent of all visitation privileges absent a clear showing that any contact with such parent would be detrimental to the child. It would follow that any diminution of visitation privileges contained in the interlocutory and final divorce decrees should be no greater than necessary to serve the best interests of the child. Where it is possible to serve such interests by an order providing for less than full deprivation of visitation privileges, the court should make such an order and no more.

We shall now examine the proceedings in the trial court and particularly defendant's contention that the court permitted inadmissible evidence to remain in the record for purposes of impeachment. Defendant was called under section 2055, Code of Civil Procedure,[1] and asked questions concerning asserted attempted sexual misconduct with plaintiff prior to their separation, i.e., prior to July 1955. The net result of the court's ruling was that defendant's denial of these charges was permitted to remain in the record for purposes of impeachment although the court properly held this evidence was immaterial for substantive purposes. Plaintiff later took the stand and testified to defendant's attempted conduct in this particular, and thereby contradicted defendant's denial of such asserted misconduct. The trial court made an identical ruling on this testimony.[2] The

[1]Section 2055, Code Civ. Proc., reads in pertinent part: "A party to the record of any civil action or proceeding . . . may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses."

[2]It is unnecessary to determine whether in fact the trial court did ignore the testimony concerning asserted attempted misconduct for substantive purposes. We should point out, however, that, at the least, the court's language in two of its findings raises a doubt. Finding XXVI states: "The Court finds, from the evidence, that all of the material allegations set forth and contained within plaintiff's affidavit in support of her Order to Show Cause in Re: Modification of Custody and Support, and set forth and contained within her Affidavit in Support of her Order

court was in error in permitting this evidence to remain in the record for purposes of impeachment. In the first place, the testimony in question was obviously on a collateral and irrelevant matter. Such testimony may not be used for impeachment. (*Moody* v. *Peirano,* 4 Cal.App. 411, 416 [88 P. 380]; Witkin, California Evidence, §§ 673, 674.) Further, "[a] party cannot cross-examine his adversary's witness upon irrelevant matters, for the purpose of eliciting something to be contradicted." (*People* v. *Dye,* 75 Cal. 108, 112 [16 P. 537].) ▪ Second, plaintiff's questioning of defendant on this collateral matter "offended against the rules limiting impeachment and stating the way a witness may be impeached as prescribed in section 2051 of the Code of Civil Procedure as follows: 'A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony. . . .'" (*People* v. *Vanderburg,* 184 Cal.App.2d 33, 40 [7 Cal.Rptr. 287].) ▪ Third, "'. . . if a question is put to a witness on cross-examination which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked him the question . . .' (*People* v. *Chin Mook Sow,* 51 Cal. 587, 660]." (*People* v. *Vanderburg, supra,* p. 41.)

▪ In light of the judge's ultimate orders in this case, it seems highly probable that she concluded from this erroneously admitted evidence (which she considered properly before her for impeachment) that defendant was thoroughly unreliable, and that she was therefore justified in disbelieving,

to Show Cause in Re: Contempt are true." In Finding VIII, the trial court states: "Within her said Affidavit in Opposition [to defendant's Affidavit and Order to Show Cause in Re: Modification of Final Judgment] plaintiff alleged, among other things, the following: . . . That the defendant has abnormal sex tendencies . . ." Comparison of these two findings ". . . demonstrates the validity of the well-settled rule that 'findings of fact should be definite and certain.' (*Andrews* v. *Cunningham,* 105 Cal. App. 2d 525, 528 [233 P.2d 563].)" (*Spurrell* v. *Spurrell,* 205 Cal.App.2d 786, 791 [23 Cal.Rptr. 414].) The uncertainty created by findings such as those in the case at bar also demonstrates the necessity for the 1959 amendment of section 632 of the Code of Civil Procedure which provides: "The statement of facts found shall fairly disclose the court's determination of all issues of fact in the case." (Stats. 1959, ch. 637, p. 2613, § 1.) "An examination of the . . . findings of fact in this case demonstrates that . . . the court failed to observe the amendment." (*Spurrell* v. *Spurrell, supra,* at p. 791.)

and apparently did disbelieve, his testimony with reference to matters touching upon his right of visitation, and with respect to his income and living expenses and consequent financial ability to pay increased child support. Thus the error in question becomes not only serious but prejudicial for it has the effect of depriving him of a fair trial.

Finally, the evidence properly before the court is not sufficient to justify the sweeping order made by the judge by which the father was denied all visitation privileges with his child. There is no evidence of any serious misconduct on the part of defendant that would detrimentally affect the child, other than perhaps the difficulties between the adults involved, during the more than six years intervening between the separation of the parents and the instant hearing in the trial court. Obviously the problem here presented can be adequately handled by the exercise of some common sense and self-control on the part of the adults involved and the issuance of a less sweeping order re visitation, if upon a retrial the judge should conclude that the original visitation order (contained in the interlocutory and final decrees) should be modified.

The purported appeal from the order adjudging defendant in contempt is dismissed. The portions of the order modifying defendant's visitation rights and increasing child support payments are reversed, and a new trial is granted on these issues. Each party will bear his or her own costs on appeal.

Ashburn, J., and Herndon, J., concurred.